**Colleen MURPHY, Appellee**

v.

**James McDERMOTT, Appellant.**

Superior Court of Pennsylvania.

Submitted July 21, 2008.

Filed July 31, 2009.

Stephen J. Bachman, Kingston, for appellant.

Lawrence D. McDonald, Wilkes–Barre, for appellee.

BEFORE: LALLY–GREEN, FREEDBERG, and FITZGERALD,* JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, James McDermott ("Father"), appeals from the order entered in the Luzerne County Court of Common Pleas, dismissing his exceptions to a support order for the parties' minor child, A.M. ("Child"), born on July 30, 2002. We hold that the court erred in calculating: (1) Father's 2008 income by including one-time stock options exercised in 2007; (2) Father's 2006 and 2007 income by failing to calculate perquisite income from personal use of a company-provided vehicle appropriately; and (3) Father's income by not accounting for the withdrawal penalty when it included his employer's gross contributions to his 26 U.S.C. § 401(k) and stock accounts. Accordingly, we vacate the order and remand for further proceedings.

¶ 2 This Court previously set forth the background:

The parties to this matter have never been married. [Father] is an oncology accounts manager, supplying medications to hospitals, at Glaxo–Smith–Kline.... Appellee [Colleen Murphy ("Mother")] is the owner/operator of a nail salon.... Two months after the child's birth, [Father] acknowledged paternity, and a month after that, [Mother] commenced a support action. An initial award ... was entered, and the following June, [Mother] sought modification. After a master's hearing and the entry of the master's order, [Father] sought *de novo* review in the trial court which entered the [July 13, 2004] order underlying this appeal, directing [him] to pay $1,535.84 per month in support. This amount includes $268.47 in arrearages, and 81% of unreimbursed medical expenses exceeding $250 per year.

*Murphy v. McDermott,* No. 1274 MDA 2004, slip op. at 1–2, 876 A.2d 478 (2005) (unpublished memorandum) at 1–2. The parties never lived together. This Court affirmed.

¶ 3 In September 2005, Mother enrolled the child in a private preschool program.

* Former Justice specially assigned to Superior Court.

N.T., 5/16/07, at 21. Father apparently "disagreed" with that decision. *Id.* at 20. Nevertheless, Father voluntarily paid Mother $1,400.00 of the $1,980.00 cost of the 2005–2006 school year. He paid the first $1,000.00 in September 2005, and an additional $400.00 in January of 2006. *Id.* at 20–23.

¶ 4 On May 3, 2006, the trial court entered an interim support order directing Father to pay $1,500.00 per month, including $137.00 per month for "private school tuition."

¶ 5 For the 2006–2007 school year, Mother enrolled the child in the same school's pre-kindergarten program. Father again "did not agree" with the decision. *Id.* at 27. This year, however, Father did not voluntarily contribute. *Id.* At the time of the hearing, Mother planned to enroll the child in a related school's kindergarten program[1] in September 2007. She testified that it was in the child's best interest to attend "because he has been with these children for two years now, and academically I think they have a great program." *Id.* at 32.

¶ 6 Father testified that he did not agree with the decision to enroll the child in private school. *Id.* at 69. He stated that he began in Catholic school, but graduated from public school. He opined that the public schools "offer[ ] more," and have programs to meet a child's needs, whether they are advanced or in need of special attention. *Id.* at 70–71.[2] In particular, he testified that he had spoken to some of his friends who teach at the local public school, and concluded that it would be suitable for his son. *Id.* at 73.[3] Father testified that his objection to his son attending private school was "philosophical" rather than financial. *Id.* at 77.

¶ 7 On July 30, 2007, the master entered a recommendation that Appellant pay $1,896.74 per month in child support, including $241.56 per month toward private school tuition. The master reasoned that Father's "objection to [the child's] enrollment in the parochial school for his education does not overcome the best interests of the child taking into consideration the fact [that Father] has already paid $1,400.00 for [the child's] pre school education at Regis Elementary and in consideration of all [Father's] assets the fact that he should continue to contribute toward the private school tuition of his minor child." Master's Report at 8, ¶ 22. The master reasoned that Father could "easily and adequately" afford to pay for the contribution. The master further noted that in light of Father's station in life and assets, it would be in the child's best interests to continue his private school education. *Id.* at 4.

¶ 8 The master also calculated Father's income for 2006 and 2007, with 2007 net income as $10,973.66 per month. In calculating Father's 2007 income, the master included 401(k) and stock contributions by GlaxoSmithKline and perquisite income equivalent to 40% of the total cost for a company-provided car. The master also

---

1. Apparently, five Catholic schools in the Wyoming Valley (including Regis Academy, where the child attended preschool) were consolidating into a single pre-K to 8 school called Good Shepherd Academy, located on the site of Bishop O'Reilly High school in Kingston, PA. *Id.* at 32–33. Thus, the 2007–08 school year was the first year that the new school was opening. *Id.* at 46–47.

2. While page 70 was inexplicably missing from the certified record transcript, it did exist in the reproduced record.

3. The master asked, "So your answer would be yes, after investigating you found out that Valley West might be just as well as any other place for your son?" Father answered, "Yes." *Id.* at 73.

included two vested stock options which Father exercised. The master recommended, *inter alia*, that Father pay $1,896.74 per month in child support from August 1, 2007 onward.

¶ 9 Father filed exceptions, which the trial court denied on October 24, 2007. The court adopted the master's report the same day. Father filed an appeal on November 26, 2007.[4] The court did not order a Pa.R.A.P.1925(b) statement.

¶ 10 Father raises the following issues:

Whether there was sufficient evidence of a benefit to the minor child to find award of private school tuition as proper[?]

Whether the evidence established that private school is consistent with the parties' standard of living and station in life prior to separation[?]

Whether an appropriate reduction of income should have been calculated for the year following exercise of stock options by [Father?]

Whether the evidence regarding [Father's] personal use of his company vehicle justified a change in the percentage assessed for "perk" income, and whether the amounts deducted from [Father's] pay for personal use should be deducted specifically from the percentage of use deemed to be personal[?]

Whether amounts included in [Father's] income calculation representing matching by his employer to his 401k and Stock accounts were subject to reduction for appropriate taxes and early withdrawal penalties regardless of whether [Father] has actually accessed the funds[?]

Father's Brief at 4.

██ ¶ 11 We address Father's first two issues together. Father argues that the record is devoid of any evidence that Child would benefit more from attending private school than public school. Father claims that the trial court failed to compare the merits of a specific public school against the proposed private school pursuant to *Gibbons v. Kugle*, 908 A.2d 916 (Pa.Super.2006). He contends that the court misapplied the **Gibbons** analysis by improperly emphasizing his current standard of living, salary, and assets, and failing to determine the parties' standard of living at or prior to the time of separation. Father complains that the court mischaracterized his objection to private school as philosophical, as opposed to financial, and created a misimpression that he agreed Child should be placed in private school for kindergarten. Father asks this Court to reverse the trial court's decision and dismiss Mother's claim for private school tuition.

██ ¶ 12 Our standard of review is abuse of discretion:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either

---

4. Assuming the Luzerne County courts were open on November 23, 2007, the appeal is apparently untimely on its face, having been filed 33 days after the order at issue. The Luzerne County prothonotary, however, failed to give notice of the order to the parties pursuant to Pa.R.C.P. 236(b). Thus, we have jurisdiction. *See Frazier v. City of Philadelphia*, 557 Pa. 618, 735 A.2d 113, 115 (1999).

manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Id.* at 918 (citation omitted).

¶ 13 Under Pa.R.C.P.1910.16–6(d), the court may direct the obligor to contribute to private school tuition if it is a "reasonable need":

> **Private School Tuition. Summer Camp. Other Needs.** The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines. If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share may be added to his or her basic support obligation.

Pa.R.C.P.1910.16–6(d).

Thus, the Support Guidelines allow the court to include private school tuition in the support amount if the court determines that the need for private school is a reasonable one. In determining whether a need is reasonable, this Court has stated:

> A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child.

*Id.* (citations omitted).

■ ¶ 14 This Court stated clearly the obligation of parents regarding the education of their children in *Francis v. Francis,* 358 Pa.Super. 391, 517 A.2d 997 (1986) as follows. "Parents are legally obligated to provide the **reasonable** expenses of raising their children." *Id.* at 999. "[T]he applicable test is whether the cost of private schooling is a reasonable need of the child and a reasonable expectation and expense of the parents." *Id.* at 1000. A private school education may be a reasonable expense if: (1) it is established the child will benefit; and (2) private school "is consistent with the family's standard of living and station in life before the separation." *Id.; accord Gibbons,* 908 A.2d at 920; *Knapp v. Knapp,* 758 A.2d 1205, 1207 (Pa.Super.2000); *Pellish v. Gerhart,* 701 A.2d 594, 596 (Pa.Super.1997); *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382, 395 (1996).

¶ 15 The *Gibbons* Court concluded that evidence of a family's history of private schooling is not required in order for a court to conclude that the second factor is met. *Gibbons,* 908 A.2d at 923. Such evidence, however, is relevant to counter an argument that private schooling is not a reasonable need. *Id.*

¶ 16 Thus, the prevailing law of over 23 years in the Commonwealth is well-settled and guides the determination of this case. We are to uphold the trial court's decision to order private school contributions so long as the court did not abuse its discretion in determining that: (1) the child will "benefit," and (2) private schooling is consistent with the family's prior standard of living and station in life.[5]

---

5. In the instant case, the parties never married, and thus never separated. Therefore, the qualifier "prior to separation" would not apply. In such cases, it is quite consistent with the established case law that courts are to take into account the parties' financial sta-

¶ 17 The record is limited on these is- sues.[6] Nevertheless, we hold that the court did not abuse its discretion. First, it is impossible to say that the court acted unreasonably in determining that the child will "benefit." The record reflects that this very young child has been happy in private day care and pre-K classes. Moth- er enrolled him in kindergarten at a newly- consolidated Catholic school comprised, in part, of his old school. He will presumably rejoin some of his classmates from pre-K, and enjoy a similar academic philosophy as the prior school. There is no reason in the record to justify a conclusion that he will not "benefit" from this arrangement.

¶ 18 Next, the record reflects that at- tending private school is indeed consistent with the child's and the parents' station in life. The child has known only private school. Father voluntarily paid for a sub- stantial portion of the 2005–2006 school year. Moreover, Father was already un- der an interim court order directing him to contribute to private school tuition. The new order simply increased that amount (by slightly over $100.00 per month), and directed such payments to continue. Addi- tionally, the record, as detailed *supra,* re- flects that this contribution poses little, if any, financial burden on Father. Accord-

ingly, the trial court did not abuse its discretion. Father's first claim lacks mer- it.

■ ¶ 19 Father next claims that the court should have reduced his 2008 income, which would affect his support payment. Father contends that in calculating his 2007 income, the court included two stock options he exercised for a total of $23,276.67, and one unexercised stock op- tion valued at $11,100.00.[7] Father argues that because the 2007 stock options were one-time gains, the court should not have included them in determining his 2008 in- come. Father therefore suggests remand for the court to calculate his 2008 income properly. We agree.

■■ ¶ 20 "When determining income available for child support, the court must consider all forms of income." *MacKinley v. Messerschmidt,* 814 A.2d 680, 681 (Pa.Super.2002). Stock options are a form of deferred income. *Id.* at 682. A parent who declines to exercise stock options is nonetheless imputed with the monetary gain from exercising those options. *Id.* at 684. The reason for imputing this income is because the support obligation is based on a parent's earning capacity. *Id.*

tions in life regardless of whether they were married prior to the date of the order. *See Gibbons.*

6. The record could have been better devel- oped. We do observe, however, that the issue before the court was the **continued** payment of father of private school expenses.

The record before us reflects that neither party presented detailed evidence supporting her or his position. Mother testified that so far as she knew, Catholic school would con- tinue to benefit her child. Father responded in a similarly vague fashion that he had spo- ken to teachers at the public school and con- cluded that public school would be just as good for the child. Father also reflected on

his own personal experience with public and private school. If Father wanted to relieve himself of the burden of continuing to pay for private school, he should have presented ad- ditional concrete evidence to support his posi- tion.

7. By way of background:
A stock option, typically a "form of com- pensation," is defined as "an option to buy or sell a specific quantity of stock at a designated price for a specified period re- gardless of shifts in market value during the period." An option is "vested" when all conditions attached to it have been satisfied and it may be exercised by the employee. *MacKinley v. Messerschmidt,* 814 A.2d 680, 681 (Pa.Super.2002).

¶ 21 Instantly, in calculating Father's 2007 income, the court included two vested stock options that Father exercised. Based on that income calculation, the court recommended that from August 1, 2007 forward, with no end date, Father was to pay support of $1,339.18 per month, plus $241.56 per month for tuition and summer camp. Father, however, has no potential of earning income in 2008 from the two stock options he exercised in 2007. Because Father's support obligation for 2008 is based on an inflated 2007 income, we are constrained to conclude that there is insufficient evidence to sustain the support order to the extent it applies from January 1, 2008, on forward. *See Gibbons,* 908 A.2d at 918.[8]

■ ¶ 22 Father also challenges the court's calculation of his 2006 and 2007 income on a different basis. Initially, Father notes that in 2007, it cost his employer $16,798.65 per year for his company-issued vehicle. Father concedes that his employer deducts $1,820.00 per year from his paycheck for use of the vehicle, for a net cost to the employer of $14,978.65. Father does not dispute that he uses the vehicle 40% of the time for personal use.

¶ 23 As a prefatory matter, we address Mother's argument that Father is attempting to re-litigate an issue previously resolved by this Court. In 2005, Father challenged the trial court's determination regarding his personal use of the company vehicle. Father, however, is not appealing the 2005 order; he is appealing the 2007 modified order. Regardless, in 2005, Father focused on whether the entire automobile expense should be attributed to him as income. Father, however, did not specifically challenge to which sum the court should apply the 40%. Thus, contrary to

Mother's representation, Father is not attempting to re-litigate a previously resolved issue. For these reasons, we discern no obstacle in reviewing Father's claim.

¶ 24 Father claims that because he already pays his employer $1,820.00 per year for personal use of the vehicle, the 40% should be calculated from the gross amount of $16,798.65, then $1,820.00 subtracted from that result. Father does not want the 40% "charged" in addition to the $1,820.00 he already pays, resulting in an "overcharge" of $728.00 per year, or $60.67 per month. Thus, Father contends the court erred by deducting 40% from the net amount of $14,978.65 instead of the gross amount of $16,798.65, and concludes this Court should remand for recalculation. Father raises the same argument with respect to his 2006 income. We are constrained to agree.

■ ¶ 25 We must thoroughly appraise a parent's actual earnings and perquisites for purposes of calculating child support. *Mascaro v. Mascaro,* 569 Pa. 255, 803 A.2d 1186, 1194 (2002). Personal perquisites, such as vehicle expenses paid by an employer, must be included as income. *Id.* Instantly, in 2007, Father's employer paid $16,798.65 per year for his vehicle. Father employs the vehicle 40% of the time for personal use; 40% of the gross amount, $16,798.65, is $6,719.46. If Father did not pay his employer for personal use of the vehicle, then that $6,719.46 figure would be attributable to him as personal perquisite income. *See id.*

¶ 26 Father, however, does pay his employer for personal use of the vehicle, specifically $1,820.00 per year. This is an expense, and not income. Thus, we sub-

---

8. Mother claims the issue is not yet ripe because Father could file a petition for modification. We disagree. Father timely filed ex-

ceptions, the record references stock options Father has for 2007 and 2008, and the order appealed from currently affects Father.

tract $1,820.00 from $6,719.46 and arrive at $4,899.46 as Father's 2007 perquisite income. This $4,899.46 figure represents personal vehicle expenses paid by Father's employer and which is not reimbursed by Father. Because the court deducted 40% from $14,978.65 instead of $16,798.65 in calculating Father's perquisite income, we conclude the court abused its discretion. *See Gibbons,* 908 A.2d at 918.

■ ¶ 27 Finally, Father claims that the court miscalculated his income by using the gross amount of his employer's contributions to his 401(k) and stock accounts. Father contends that the post-tax and post-penalty amount of his employer's contributions should have been used in calculating his net income for support purposes. Father relies on Pa.R.C.P.1910.16–2(c), which provides that taxes be deducted from gross income to arrive at net income, and *Portugal v. Portugal,* 798 A.2d 246 (Pa.Super.2002). He argues this Court should reverse and remand for recalculation of his income to account for taxes and penalties attributable to his employer's 401(k) and stock contributions. We agree that Father is entitled to relief.

¶ 28 The *Portugal* Court addressed the issue of whether the trial court abused its discretion by "failing to include the employer's matching contributions to Husband's 401(k) plan as income for support purposes." *Id.* at 252. The Court held:

[A]n employer's contribution to an employee's retirement plan could constitute income as defined in section 4302. An employer's contribution would constitute "any form of payment … collectible by an individual regardless of source" if the employee could access his employer's contributions (regardless of penalties) at the time of the support calculation. Indeed, such a determination would need to be made by the trial court on a case-by-case basis. For if an employee/par-

ent is entitled to any portion of these funds at the time of the support calculation, his/her children should presently reap the benefit of the investment.[2]

_____

2. We note that it is not determinative in the instant case that contributions to a 401(k) are not taxable as income at the time of the contribution. It is well settled that taxable income is not the same as net income for support purposes. This is so because tax law contains many preferences that have no relationship to the parties' support obligation.

*Id.* at 253 (citations omitted). The *Portugal* Court remanded the case to the trial court to determine whether the husband possessed the present ability to access his employer's 401(k) contributions. *Id.* "If the trial court determines that he has such access, employer's contributions, **less the penalty incurred for withdrawal,** shall constitute additional income for purposes of the child support calculation." *Id.* (emphasis added). The Court declined to include taxes.

¶ 29 Instantly, the trial court erred by not accounting for the withdrawal penalty when it included the employer's gross contributions to Father's 401(k) and stock accounts. *See id.* The *Portugal* Court established that in calculating income, the court shall include the amount of any employer's 401(k) and stock contributions minus any penalties incurred for withdrawal. *See id.* Taxes attributable to the withdrawal of the employer's 401(k) and stock contributions, however, are not considered part of the income calculation. *See id.* We are therefore constrained to conclude the court abused its discretion. *See Gibbons,* 908 A.2d at 918. Accordingly, for all these reasons, we vacate the order. We remand for recalculation of Father's net income and support obligation in accordance with this memorandum.

¶ 30 Order vacated. Case remanded with instructions. Jurisdiction relinquished.

¶ 31 FITZGERALD, J., files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY FITZGERALD, J.:

¶ 1 I join the majority's decision in full, except for the issue of private school payment. I respectfully dissent from the majority's ruling on that issue.

¶ 2 I believe that the record contained insufficient evidence to establish Child would benefit from private school. Specifically, I would conclude that when a child has not yet reached mandatory schooling age and a parent or guardian files a petition requesting contribution for private school tuition, the petitioner should establish that the public school at issue is manifestly deficient. The petitioner should therefore prove that the public school would not be in the child's best interest or, conversely, private school is demonstrably more beneficial than public school.

¶ 3 A brief summary of the facts concerning the private school payment issue is appropriate. Child was born on July 30, 2002. In September, 2005, Mother enrolled Child in a private preschool program. N.T., 5/16/07, at 21. Though Father apparently "disagreed" with that decision, he nevertheless voluntarily paid Mother $1,400.00 of the $1,980.00 cost of tuition for the 2005–06 academic year. *Id.* at 20. Mother enrolled Child in the same school's pre-kindergarten program for the 2006–07 academic year. However, Father did not voluntarily contribute to the private school tuition for the 2006–07 academic year. *Id.* at 27.

¶ 4 During the hearing, Mother enrolled Child in a private school kindergarten program, to begin in September 2007. However, while this program was related to Child's preschool program, it was not the same program. Five Catholic schools in Wyoming Valley, one of which was Regis Academy, where Child attended preschool, united to become one large pre-kindergarten to eighth-grade school called Good Shepherd Academy. *Id.* at 32–33. Father, once again, disagreed with the decision to enroll Child in this private school program. *Id.* at 69.

¶ 5 At the hearing, Mother testified that this particular private school would be in Child's best interest because he had been attending that school with the same children for two years and it has a great academic program. *Id.* at 32. Conversely, having begun his schooling in Catholic school, but graduating from public school, Father believed that public schools offered more programs to meet the needs of Child, whether Child would require advanced courses or special needs courses. *Id.* at 70–71. Furthermore, he explained that he had spoken with some of his friends who teach at the local public school, and concluded that the public school would be suitable for his son. *Id.* at 73. In addition, Father testified that his objection to his son attending private school was "philosophical" rather than financial. *Id.* at 77.

¶ 6 Although the trial court focused heavily on Father's finances and his objection to private school, the record contains scant evidence as to whether Child would benefit from private school:

> Q. Why do you believe it's in [Child's] best interest to attend that [school]?
>
> [Mother]. Because he has been with these children for two years now, and I think academically they have a great program.

N.T., 5/16/07, at 32. These two lines constitute the only testimony of record as to

whether private school would be in Child's best interest.

¶ 7 After due consideration of this limited record, I cannot agree that this meets the mandated burden of "sufficient evidence." *Cf. Gibbons*, 908 A.2d at 920–21(evaluating impact of school on child, including testimony from the child, child's teacher, and child's principal, and testimony by the child's mother on how she works with the school to address the child's study habits); *Francis*, 517 A.2d at 1000. Moreover, I do not consider Father's objection to private schooling to be merely "philosophical." Rather, he raises the legitimate point that public schooling could be in Child's best interest and cannot be considered presumptively deficient. I further observe that I would have afforded less weight to Mother's testimony that Child has established a bond with the other children at the school considering that Child had not yet begun kindergarten and no details were provided as to Child's relationship with his schoolmates.

¶ 8 The majority claims that "it is impossible to say that the court acted unreasonably in determining that the child will 'benefit.' " Majority Op. at 378. Given the scant record, I must disagree. The majority relies upon the fact that Mother enrolled Child in kindergarten at a newly-consolidated school. I submit this fact counters the notion that this newly-consolidated school will "benefit" Child. Rather than remaining in the same or similar school with the same children, as the majority seems to allude to, Child would attend school in a completely new building, with a class size greatly increased by the consolidation of the five schools, if Child remained in private school. *See* Majority Op. at 375 n. 1. With such a scant record, I am uncomfortable with the majority's conclusion.

¶ 9 In addition, the majority states "the record … reflects that this contribution [by Father] poses little, if any, financial burden on Father." However, I suggest this factor should not even be considered. The question that should be addressed is whether Father **should** pay for the reasonable private schooling, not whether Father is financially **able** to pay for the private schooling. While Father's financial situation comes into play when determining **how much** of the private school tuition he should pay, his financial situation should not be dispositive of whether he should pay at all.

¶ 10 I believe Mother should be required to establish via a preponderance of the evidence that, given Child's young age, public school is manifestly deficient as compared to private school, and thus would not be in his best interests, particularly when Child has not yet begun the education mandated by law. *See* 24 P.S. § 13–1304. Conversely, I believe that Mother should have the burden of establishing that pre-kindergarten or kindergarten at a public school would not benefit Child's "physical, intellectual, moral and spiritual well-being" in any way. *Staub v. Staub*, 960 A.2d 848, 853 (Pa.Super.2008) (quoting *A.J.B. v. M.P.B.*, 945 A.2d 744, 747 (Pa.Super.2008)).

¶ 11 I am greatly reluctant to affirm, on such scant evidence, the trial court's summary conclusion that private school, and not public school, was in Child's best interest given Child has not yet begun first grade. I cannot rubberstamp any analysis that presumptively concludes private school is superior to public school given all the attendant facts and circumstances, including, without limitation, Child's age and the start of his legally mandated education. In particular, I am unaware of any legal basis upon which one married parent could legally challenge the decision of the other

parent to have their child begin legally mandated education at a public school. I observe that our Courts have previously noted their concerns about treating the children of married and divorced/unmarried families differently. *See Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995) (holding 23 Pa.C.S. § 4327 (1994) unconstitutional because it improperly treated "the children of married families and divorced/unmarried families differently" by compelling divorced/unmarried families to provide some financial assistance for post-secondary education). Accordingly, we should be particularly cautious about how our courts handle the beginning of a child's mandatory education, which begins at the first-grade level.

¶ 12 I agree with the majority for most of the issues presented before this Court. However, for all these reasons, and given these unique facts and circumstances, I respectfully dissent from the majority on the issue of private school payment.