J-S19044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID BARNES, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| STEPHANIE BARNES, | : | |
| | : | |
| Appellee | : | No. 2463 EDA 2014 |

Appeal from the Order entered on July 17, 2014
in the Court of Common Pleas of Montgomery County,
Civil Division, No. 2009-35782 Paces #549111275

BEFORE: STABILE, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 29, 2015**

David Barnes ("Father") appeals from the Order[1] setting forth his

monthly child support. We affirm.

In its Memorandum accompanying the support Order, the trial court

set forth the relevant procedural history as follows:

> []Stephanie Barnes ["Mother"] and [Father] were married on
> May 25, 1996[,] in Philadelphia, Pa. They are the parents of two
> minor children: [L.B.] … (D.O.B. 1/18/99) and [E.B.] … (D.O.B.
> 4/11/06) [collectively "the Children"], both of whom reside
> primarily with Mother. The parties separated some time in 2009,
> and on November 4, 2009, Mother filed a Complaint in divorce,
> which included a claim for child support of the [C]hildren.
>
> On February 4, 2010, an interim Per Curiam Order was entered,
> wherein Father agreed to pay one-thousand dollars ($1,000) per
> month, and contribute fifty percent (50%) of the tuition for The

---

[1] We note that while the Order was dated July 15, 2014, the Order was docketed and notice was sent to the parties on July 17, 2014. ***See*** Pa.R.C.P. 236(b); Pa.R.A.P. 108(b).

Baldwin School ("Baldwin")[2] for [L.B.] for the 2009-2010 school year only, and 50% of child care expenses for [E.B.] Accordingly, Father did not contribute to [L.B.'s] Baldwin tuition for the 2010-2011, 2011-2012, and 2012-2013 school years. On June 22, 2012, the parties entered into a property settlement agreement to equitably divide their marital assets. Said agreement specifically states that the "agreement does not affect in any way child support or child custody. Each party is free to file any petition in the future to modify those issues." On July 9, 2012, the parties were divorced from the bonds of matrimony. Thereafter[,] on October 15, 2012, Mother filed a [P]etition to modify the February 4, 2010 Support Order with the Domestic Relations Office. Mother alleged several changes of circumstances, including: 1) an increase in Father's income; 2) a decrease in Mother's income; and 3) [E.B.] was enrolled in [Baldwin].

As a result of Mother's [P]etition to modify, on March 8, 2013[,] the Master issued a recommendation in support wherein Father was to pay a total of $1,619.62 per month, allocated as [follows]: $912.80 per month for child support of two children, $181.95 per month for medical insurance provided by Mother, and $524.87 per month for private school tuition. On March 22, 2013, Father filed … Exceptions …. Specifically, Father challenge[d] the Master's determination regarding his net income, and the reasonableness of private school tuition.

Memorandum and Order, 7/17/14, at 1-2 (footnote added).

The trial court set forth what occurred next in its Pa.R.A.P. 1925(a)

Opinion as follows:

On February 21, 2014, t[he trial c]ourt presided over the *de novo* hearing and heard testimony from the parties about their respective earnings, and perspectives on the [C]hildren attending Baldwin. On that same date, t[he trial c]ourt issued an Order directing the parties to submit briefs on [the] admissibility of non-appearing expert report[s] by March 14, 2014, and to submit post[-]hearings briefs by March 21, 2014. On March 21, 2014, Father's counsel filed an Emergency Petition

_____

[2] Baldwin is an all-girls independent private school located in Bryn Mawr, Pennsylvania.

for Leave to Introduce [Father's] 2013 filed [i]ncome [t]ax [r]eturn. Thereafter, on March 28, 2014, t[he trial c]ourt[,] upon consideration of Father's Emergency Petition[,] issued an Order scheduling an additional hearing on May 14, 2014.

On May 14, 2014, counsel for the parties conferenced before the [trial c]ourt to review Father's 2013 income tax return. Counsel assessed various deductions, and discussed which deductions were appropriate or permissible for purposes of calculating Father's income available for support. After [the] conference, counsel stipulated as follows: 1) Father's gross income available for support in 2013 is $63,941; 2) Father['s] tax deductions for 2013 amount to $11,439; and accordingly, 3) Father's net income for support for 2013 amounts to $52,502, which breaks down to $4,375.17 per month.[3]

At the conclusion of the hearing on May 14, 2014, t[he trial c]ourt issued an Order directing the parties to file post-trial briefs, including proposed support calculations, within two (2) weeks of the date of this Order. After thorough review of all testimony, exhibits, and briefs submitted in the matter, th[e trial c]ourt on July [17], 2014[,] issued a Memorandum and Order, which calculated the parties' net monthly income, analyzed whether private school tuition was a reasonable need pursuant to Pa.R.C.P. 1910.16-6(d), and ultimately directed Father to pay a monthly support obligation of $1,639.65, allocated as $897.4 per month as basic child support for his two minor children, plus $183.67 per month for medical insurance provided by Mother, plus $558.52 per month for private school tuition. [The trial court stated that the support Order was effective January 1, 2013.]

On August 18, 2014, Father filed a Notice of Appeal … [and a

---

[3] Father is a self-employed exhibit/set designer, who works for the movie and zoo business. Father is also a sculptor. Mother is a brand manager for Ralph Lauren and has a net monthly income of $5,163.48.

court-ordered Pa.R.A.P. 1925(b) Concise Statement.[4]]

Trial Court Opinion, 10/24/14, at 3-4 (footnotes omitted; footnotes added).

On appeal, Father raises the following questions for our review:

Did the trial court err in calculating the parties' respective incomes because:

(1)   it include[d] supposed [Individual Retirement Account ("IRA")] funds as part of [Father's] on-going income[;]

(2)   [the] trial court erroneously excluded [Mother's] personal perquisites[;]

(3)   [the] trial court erred by including over $13,000 unemployment compensation as on-going income[;]

(4)   [the] trial court deviation from the guidelines to compel [Father] to pay for private school was an abuse of discretion[?]

Did the trial court err by failing to require:

(5)   that [M]other carry her burden of proof[,] and prove by competent evidence that public school is deficient, thereby justifying private school education[;]

(6)   that [M]other prove that private school is a reasonable need that falls within the parties' standard of living prior to separation[?]

Brief for Appellant at 4.

_____

[4] Father's Notice of Appeal as to the July 17, 2014 support Order is timely. The thirtieth day after the entry of the Order was Saturday August 16, 2014. **See** Pa.R.A.P. 903(a) (stating that a notice of appeal must be filed within thirty days of the entry of the order from which the appeal is taken). Father had until Monday, August 18, 2014 to file a notice of appeal. **See** 1 Pa.C.S.A. § 1908 (providing that when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation). Thus, Father's August 18, 2014 Notice of Appeal is timely.

Our standard of review for child support orders is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***W.A.M. v. S.P.C.***, 95 A.3d 349, 352 (Pa. Super. 2014) (citation omitted); *see also **Brotzman–Smith v. Smith***, 650 A.2d 471, 474 (Pa. Super. 1994) (stating that an assessment of the credibility of the witness is within the province of the trial court and the court is free to weigh the evidence presented).

In his brief, Father has addressed his claims regarding the calculation of the parties' incomes together. Father contends that the trial court erred in calculating the parties' incomes. Brief for Appellant at 7. Father argues that the trial court erroneously included IRA funds amounting to $3,547 that he withdrew prematurely, and unemployment compensation, in determining his net income. *Id*. at 7, 9. Father asserts that these payments were a one-time disbursement, and thus inflated his net income for 2013. *Id*. at 9-10, 11. Father claims that the amount of child support is unreasonable, as it forces him to live like a pauper. *Id*. at 10.

"Generally, the amount of support to be awarded is based upon the parties' monthly net income." Pa.R.C.P. 1910.16-2. "The assessment of the

full measure of a parent's income for the purposes of child support requires courts … to determine ability to pay from all financial resources." ***D.H. v. R.H.***, 900 A.2d 922, 930 (Pa. Super. 2006) (citation and internal quotation marks omitted). "When determining income available for child support, the court must consider all forms of income." ***MacKinley v. Messerschmidt***, 814 A.2d 680, 681 (Pa. Super. 2002). Pennsylvania Rule of Civil Procedure 1910.16-2, which governs support and income calculations, states the following in relevant part:

> **(a) Monthly Gross Income.** Monthly gross income is ordinarily based upon at least a six-month average of all of a party's income. The term "income" is defined by the support law, 23 Pa.C.S.A. § 4302,[5] and includes income from any source. The statute lists many types of income including, but not limited to:

---

[5] The Domestic Relations Code defines "income" as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.

(1) wages, salaries, bonuses, fees and commissions;

\*\*\*

(4) pensions and all forms of retirement;

\*\*\*

(6) Social Security disability benefits, Social Security retirement benefits, temporary and permanent disability benefits, workers' compensation and unemployment compensation;

\*\*\*

**(c) Monthly Net Income.**

(1) Unless otherwise provided in these rules, the court shall deduct only the following items from monthly gross income to arrive at net income:

(A) federal, state, and local income taxes;

(B) unemployment compensation taxes and Local Services Taxes (LST);

(C) F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;

\*\*\*

Pa.R.C.P. 1910.16-2 (footnote added).

With regard to Father's retirement funds, the trial court properly calculated Father's 2013 income to include income from the premature withdrawal of his IRA and self-employment pension. **See** Trial Court Opinion, 10/24/14, at 7-8; **see also** Pa.R.C.P. 1910.16-2(a); **Portugal v. Portugal**, 798 A.2d 246, 252 (Pa. Super. 2002) (stating that section 4302 of the Domestic Relations Code "broadly states that 'all forms of retirement'

and 'pensions' constitute income."). Here, Father introduced his 2013 income tax return into the record and stipulated that his net yearly income was $52,502, making his monthly income $4,375.15. *See* N.T., 5/14/14, at 7; *see also* Trial Court Opinion, 10/24/14, at 7. Father's net yearly income *included* his early withdrawal of $1,430 from his Vanguard IRA, and $2,117 from his self-employment pension. *See* N.T., 5/14/14, at 6; *see also* Trial Court Opinion, 10/24/14, at 8. After entering the stipulation, Father's counsel argued that the early withdrawal of his retirement accounts should not be included in the income calculation going forward because he had "depleted" his accounts. N.T., 5/14/14, at 10. However, beyond counsel's statement that Father had depleted his accounts, "there was no documentary or testimonial evidence adduced at trial demonstrating the amount of money remaining in Father's pension or Vanguard IRA." Trial Court Opinion, 10/24/14, at 8. Indeed, Father does not cite to any evidence on appeal establishing that his retirement accounts were depleted, or that the money from the accounts was a one-time gain and could not be utilized going forward. Thus, based upon the evidence of record, we conclude that the trial court properly included as income the disbursements from Father's

retirement accounts in determining his net monthly income.[6]

With regard to the unemployment compensation, the trial court properly calculated Father's 2013 income to include the unemployment compensation he received. *See* Trial Court Opinion, 10/24/14, at 8-9; *see also* 23 Pa.C.S.A. § 4302; Pa.R.C.P. 1910.16-2(a). As above, Father stipulated that he received unemployment compensation totaling $13,113 in 2013. N.T., 5/14/14, at 6. While Father claims that his 2013 unemployment compensation could not be considered recurring income and should be excluded from his income calculation, he specifically testified that he received unemployment compensation for January and February of 2014. N.T., 2/21/14, at 40, 82-83. Moreover, Father specifically stated that unemployment compensation is a part of his yearly income because of the nature of his work. *Id*. at 10-11. Based upon this record, we conclude that the trial court properly included Father's unemployment compensation in calculating his net monthly income.

Father further contends that the trial court's calculation of Mother's income was in error, as the trial court refused to include Mother's receipt of

---

[6] Father is free to file a petition to modify the support Order at any time to demonstrate a diminished net income. *See Plunkard v. McConnell*, 962 A.2d 1227, 1229 (Pa. Super. 2008) (stating that "[a]n award of support, once in effect, may be modified via petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification."); *see also* Pa.R.C.P. 1910.19.

perquisites, in the amount of $100, from her employer towards her cell phone costs. Brief for Appellant at 13.[7]

In determining a parent's financial obligation to support his children, "a court must make a thorough appraisal of the [parent's] actual earnings and perquisites ...." **Mascaro v. Mascaro**, 803 A.2d 1186, 1194 (Pa. 2002). Personal perquisites paid by an employer, such as automobiles, phones, and fuel expenses, must be included as income. **Id**.; **see also Heisey v. Heisey**, 633 A.2d 211, 212 (Pa. Super. 1993) (stating that "personal perquisites, such as entertainment and personal automobile expenses, paid by a party's business must be included in income for purposes of calculating child support.").

The trial court stated that while personal perquisites must be included in calculating Mother's income, it did not include any perquisites in determining Mother's income because there was insufficient evidence to calculate the amount of perquisites received by Mother. **See** Trial Court Opinion, 10/24/14, at 9-10. The trial court points out that during the February 21, 2014 hearing, Mother testified that her employer pays for her cell phone, but did not know the amount paid for the cell phone as the bill went directly to her employer. **See id**. at 10 (citing N.T., 2/21/14, at 186-87). However, Mother explicitly stated that her employer provided her with $100 a month to expend on a cell phone and/or internet in 2013. N.T.,

---

[7] Father only sets forth a single sentence supporting his claim, and fails to cite to the record or relevant case law. **See** Pa.R.A.P. 2119(a).

2/21/14, at 188-89; *see also* Trial Court Opinion, 10/24/14, at 10 (acknowledging that "testimony adduced demonstrates that previously, in 2013, Mother's employer would provide her with $100 per month to use for internet and/or cell phone, but said practice has ceased."). While the trial court utilized the parties' net income from 2013 to determine their respective child support obligations, from this record, it is unclear whether Mother used the cell phone for personal use, for business purposes or a combination of both. *See, e.g., Murphy v. McDermott*, 979 A.2d 373, 379-80 (Pa. Super. 2009) (calculating father's personal use of vehicle provided by his employer in determining how much income is derived from this perquisite); *DeMasi v. DeMasi*, 530 A.2d 871, 879 (Pa. Super. 1987) (stating that trial court did not err in adding income from husband's perquisites equal to the perquisites that did not directly benefit the corporation). Because Father has not demonstrated that Mother's perquisites were for personal use, we conclude that the trial court did not abuse its discretion in calculating Mother's income. *See Marter v. Ross*, 439 A.2d 1181, 1182 (Pa. Super. 1982) (stating that "[a] support order cannot rest upon the speculation of the trial judge as to the extent of a

parent's income when there is no evidence of that income on record.").[8]

In his fifth and sixth claims, Father contends that the trial court erred in ruling that private school is a reasonable need for the Children. Brief for Appellant at 16, 17-18. Father argues that private school was inconsistent with the parties' standard of living prior to separation. *Id*. at 16, 19-21. Father points out that the parties lived with numerous unpaid bills, utility shutoff notices, and tax liens while they were married. *Id*. at 20-21. Father further argues that Mother failed to meet her burden of proof to demonstrate that public school could not provide adequate educational programs for the Children. *Id*. at 16-19. Father argues that paying for private school was beyond his means. *Id*. at 21; *see also id*. at 15-16 (wherein Father claims that the disparity in his earnings from Mother demonstrates that the trial court should not have deviated from the support guidelines in mandating that he pay for private schooling for the Children).

In its Memorandum and Order, the trial court set forth the relevant law and determined that the evidence demonstrated that the Children's

---

[8] Father also argues that the trial court failed to include Mother's deferred income, which is not subject to taxes, in the child support calculations. *See* Brief for Appellant at 14 (stating that Mother contributes $4,282 into her 401(k) annually and has deferred income of $18,666.45, all of which should be available for child support). Father further asserts that Mother has other assets in her bank account and has unexplained deductions related to medical expenses that should be considered income. *Id*. at 13-14. However, Father failed to raise these claims in his Rule 1925(b) Concise Statement; thus, the claims are waived on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 803 (Pa. Super. 2007).

attendance of private school was reasonable and that private schooling was consistent with the parents' standard of living prior to separation. *See* Memorandum and Order, 7/17/14, at 4-9. Upon our review of the evidence, we agree with the trial court's reasoning, and conclude that it did not abuse its discretion in directing Father to pay a share of the private school tuition. *See id*.; *see also Murphy*, 979 A.2d at 378 (concluding that the trial court did not abuse its discretion in ordering father to pay a portion of child's private school tuition because child, who had attended only a private school, clearly benefited from private school, such a payment was consistent with the child's and the parents' station in life, and father had previously contributed to the tuition payment). Thus, we conclude Father's claims are without merit.

Order affirmed.

Stabile, J., joins the memorandum.

Jenkins, J., concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2015

Circulated 03/31/2015 03:54 PM

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,**
**PENNSYLVAN**
**FAMILY DIVIS**

2009-35782-0109  7/17/2014 9:45 AM  # 9880279
Order
Rcpt#Z2166424  Fee:$0.00
Mark Levy - MontCo Prothonotary

STEPHANIE BARNES           :
       **Plaintiff**         :
                         :     **NO. 2009-35782**
    vs.                     :     **PACES No. 549111275**
                         :
**DAVID BARNES**           :     **IN: SUPPORT**
       **Defendant**      :

## MEMORANDUM AND ORDER

Currently before this Court is Defendant, David Barnes', Exceptions to the

Recommendation of Support that was entered as a Per Curiam Order on March 8, 2013. The

relevant factual and procedural history is as outlined below.

Plaintiff-Mother, Stephanie Barnes, (hereinafter "Mother") and Defendant-Father, David

Barnes (hereinafter "Father") (collectively "parents") were married on May 25, 1996 in

Philadelphia, Pa. They are the parents of two minor children: Lily Barnes, age 15 (D.O.B.

1/18/99) and Emma Barnes, age 7 (D.O.B. 4/11/06) (hereinafter collectively referred to as

"children"), both of whom reside primarily with Mother. The parties separated some time in

2009, and on November 4, 2009, Mother filed a Complaint in divorce, which included a claim

for child support of the children.

On February 4, 2010, an interim Per Curiam Order was entered, wherein Father agreed to

pay one thousand dollars ($1,000) per month, and contribute fifty percent (50%) of the tuition for

The Baldwin School ("Baldwin") for Lily Barnes for the 2009-2010 school year only, and 50%

of child care expenses for Emma Barnes. Accordingly, Father did not contribute to Lily's

Baldwin tuition for the 2010-2011, 2011-2012, and 2012-2013 school years. On June 22, 2012,

1

the parties entered into a property settlement agreement to equitably divide their marital assets. Said agreement specifically states that the "agreement does not affect in any way child support or child custody. Each party is free to file any petition in the future to modify those issues." On July 9, 2012, the parties were divorced from the bonds of matrimony. Thereafter on October 15, 2012, Mother filed a petition to modify the February 4, 2010 Support Order with the Domestic Relations Office. Mother alleged several changes of circumstance, including: 1) an increase in Father's income; 2) a decrease in Mother's income; and 3) Emma Barnes was enrolled in The Baldwin School.

As a result of Mother's petition to modify, on March 8, 2013 the Master issued a recommendation in support wherein Father was to pay a total of $,1619.62 per month, allocated as: $912.80 per month for child support of two children, $181.95 per month for medical insurance provided by Mother, and $524.87 per month for private school tuition. On March 22, 2013, Father filed the instant Exceptions to the March 8, 2013 Support Order. Specifically, Father challenges the Master's determination regarding his net income, and the reasonableness of private school tuition.

On February 21, 2014, this Court held a de novo hearing and heard testimony from the parties about their respective earnings, and views on the children attending Baldwin. After reviewing the testimony and exhibits submitted by both parties, this Court finds as outlined below.

## MONTHLY NET INCOME

Father is a self-employed exhibit/set designer that typically works in the movie business and the zoo business. Father is also a specialist as a sculptor and does some freelance work, gained primarily through word of mouth and reputation. Testimony revealed that Father works

2

on different projects, which can vary from short-term, one day, or long-term, lasting for months. During Father's down time between projects, he typically collects unemployment.

During the hearing, parties' counsel reviewed Father's 2013 income tax return, and came to an agreement on Father's tax liability and which deductions reflected on Father's tax return constitute permissible deductions for purposes of support. Thereafter, the parties stipulated to the following calculation:

| | |
|---|---|
| Father's gross annual income for 2013: | $63,941 |
| Father's total tax liability for 2013: | $11,439 |
| Father's net annual income for 2013: | $52,502 |
| **Father's net monthly income:** | **$4,375.17** |

Mother is a brand manager for Ralph Lauren, and has held that position for over nineteen (19) years. Mother's 2013 W-2 demonstrates that Mother earned $71,369.08 in 2013. Based upon Mother's 2013 income tax return and accompanying 2013 W-2, the Court calculates Mother's net monthly income as follows:

| | |
|---|---|
| Mother's gross annual income for 2013: | $71,369.08 |
| Mother's total tax liability for 2013: | $9,407.30[1] |
| Mother's net annual income for 2013: | $61,961.78 |
| **Mother's net monthly income:** | **$5,163.48** |

## PRIVATE SCHOOL TUITION

Emma and Lily Barnes are both currently enrolled in The Baldwin School. Lily Barnes was enrolled in Baldwin in first grade while the parties were still married, and just completed ninth (9th) grade in June 2014. Prior to her enrollment in Baldwin, Lily attended pre-

---

[1] Federal tax liability has been reduced to reflect the income tax refund received by Mother (8293.26-5714 = 2579.26).

3

kindergarten and kindergarten at Waldron Mercy Academy. Emma Barnes was enrolled in Baldwin for kindergarten in the Fall of 2011, and just completed her second (2nd) grade year in June 2014. Although it is not clear from the record what school or daycare Emma attended prior to Baldwin, it is clear from Father's testimony that "both children have only known private school."

As stated above, the March 8, 2013 Master's recommendation in support directed that Father contribute $524.87 per month toward the private school tuition of both children. The Master found that private school tuition was a reasonable expense based upon the fact that: 1) the parties made a joint decision to send the children to private school, 2) both parties attended private school themselves, and 3) the parties do not have any child care expenses since Mother's sister watches them at no cost. Father disagrees with the Master's finding that the parties made a joint decision to send the children to private school, and that the private school tuition was consistent with the standard of living and station in life of the family before separation. Furthermore, Father believes the factors relied upon by the Master were improperly considered. In addition, Father argues there is no evidence to establish that the children would benefit more from attending Baldwin than the local public school. Lastly, Father argues that the February 4, 2010 Interim Order is an agreement between the parties that Father is not obligated to contribute to private school after the 2009-2010 school year.

Under the Pennsylvania Rules of Civil Procedure 1910.16-6 (d), the court may direct the obligor to contribute to private school tuition if it is a "reasonable need." Pa.R.C.P. 1910.16-6 (d) provides:

> The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines. **If**

4

**the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes.** The obligor's share may be added to his or her basic support obligation. (**Emphasis added**).

A private school education may be a reasonable need for a child if it is demonstrated that the child[ren] will benefit from such and if private schooling is consistent with the family's standard of living and station in life prior to separation. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child. *Murphy v. McDermott*, 2009 PA Super 151, 979 A.2d 373, 377 (Pa. Super. Ct. 2009) *citing Gibbons v. Kugle*, 2006 PA Super 264, 908 A.2d 916, 921 (Pa. Super. Ct. 2006). *See also Francis v. Francis*, 358 Pa. Super. 391, 517 A.2d 997, 1000 (1986) ("[T]he applicable test is whether the cost of private schooling is a reasonable need of the child and a reasonable expectation and expense of the parents.").

As to the first prong, the benefit of private school, this Court finds that the evidence and testimony adduced demonstrates that both Emma and Lily Barnes will benefit from continued enrollment at The Baldwin School. Mother testified that the parties chose The Baldwin School for Lily, *inter alia*, because of the fact that it was an all girl school, the diversity, and the academic rigor and the resulting challenge that it would present to Lily. As for Emma, Mother learned that she was equally as academically talented as Lily, and Mother decided she could not "do for one child without doing for the other."

Since the children's enrollment in Baldwin, testimony reveals that the children are performing very well in an academically challenging environment. Lily is close to a straight "A" student, the students and faculty love her, and she is enrolled in several extracurricular activities, including: student council, head of Service League, yearbook committee, diversity committee, soccer, and dance. Mother also testified about the cultural experiences from which Lily has

5

benefitted as a result of her attendance at Baldwin. Lily is exposed to children from various backgrounds and ethnicities, and was given an opportunity to travel to Italy and Canada, and will travel to France in her upcoming 10th grade year.

Emma's report card also demonstrates that she is performing well academically at Baldwin. She is still very young and early in her academic career, but testimony reveals that Emma should expect to benefit from the same cultural exposure and academic challenge that Lily has experienced. In addition, Emma has the extra benefit of attending school with her older sister who consistently checks on her and supervises her after school while waiting for their Mother to arrive.

Father does not deny that the children are thriving at Baldwin; rather Father's argues that his children would thrive at any school they attend so Baldwin does not necessarily "benefit" them. During cross-examination of Mother, Father's counsel questioned Mother's investigation of the local public schools and the consultation of educational experts concerning private versus public schools. This Court does not find it necessary to compare Baldwin to the local public schools to determine if the children benefit from their enrollment at Baldwin. Even assuming *arguendo* that this Court believed such a comparison was necessary, this Court finds that Father did not present any concrete evidence that the local public school would be just as beneficial for the children. Father merely reflected on his and his family's personal experience in public school, and expressed that he "kind of wishes [Lily] had done public school." See *Murphy*, 979 A.2d 373, at fn. 6 (Noting that evidence of "benefit" was scant as Mother simply stated the child would benefit, and Father in a vague fashion stated that public school would be just as good. Court stated "[i]f Father wanted to relieve himself of the burden of continuing to pay for private school, he should have presented additional concrete evidence to support his position.")

6

With regard to the second factor, whether private schooling is consistent with the family's standard of living/station in life prior to separation, this Court finds, for the reasons set forth below, that The Baldwin School tuition considering the sizeable grants of financial aid afforded to the children each year is consistent with the family's station in life prior to separation.

In determining standard of living, one must look to available income and the lifestyle that the income would support. *Gibbons*, 908 A.2d 916, at 921 *citing Karp v. Karp*, 455 Pa. Super. 21, 27, 686 A.2d 1235, 1328 (1996).

Father testified that he reluctantly agreed to send Lily to Baldwin for first grade because he was scared that it was going to be unaffordable. Additionally, Father states the parties could never afford Baldwin tuition and the cost of private school was driving them apart. However, the record also demonstrates that Father voluntarily contributed to Lily's Baldwin tuition every year from 1st grade until the parties separated in 2009 when Lily was in the 5th grade. Around the time of separation, when Father voluntarily agreed to contribute 50% toward Lily's 2009-2010 school year and 50% of Emma's child care expenses (private school daycare), the combined tuition of both children was $25,060 ($13,260-Lily (Baldwin); $10,800-Emma(daycare)), requiring Father to contribute $12,530 for both children in 2009. At the time of the Master's hearing, during the 2012-2013 school year, Emma was enrolled in Baldwin and the combined tuition for both children, which included sizeable financial aid grants for both children, was $6,298.44 for both children.

While this Court is not ignorant to the expense of a Baldwin School education and the financial strain it may have caused for the parties during the marriage, the evidence adduced demonstrates that the parties laudably decided to allocate a substantial portion of their household

7

income toward a private school education for their daughters. With the assistance of financial aid grants, the parties were able to afford their children a private school education from The Baldwin School, which had a fair market value of $54,570.00 in the 2013-2014 school year, for $14,570. This court finds that it is consistent with the parties' station in life before separation for the parties to continue to take advantage of financial aid awards and afford their children a private school education.

With regard to Father's argument that Emma was unilaterally enrolled in The Baldwin School, the Court notes that Father argues both sides of the same point. On the one hand Father argues that the Master erred by considering the parties' joint decision as a factor, and on the other hand Father argues that this Court should consider the fact that he did not join in the decision to enroll Emma in Baldwin. Additionally, Father testified that both children have only known private school. The Court believes it is consistent to require Father to do for one child, what he voluntarily did for the other. *See Pellish v. Gerhart*, 701 A.2d 594, 597 (Pa. Super. Ct. 1997).

Lastly, with regard to Father's argument that the February 4, 2010 Interim Agreement represents a contract, which relieves him of any responsibility to contribute to the private school tuition of his children, the Court finds that Father's arguments lack merit for two reasons. First, the February 4, 2010 Interim support agreement does not create a contract relieving Father of any responsibility to contribute to private school tuition beyond Lily's 2009-2010 school year. The agreement did nothing more than set forth Father's agreed contribution for said year and make clear that Father's voluntary contributions do not obligate him to pay tuition in future years. Basically, the agreement instructs the Court to determine Father's contribution based on applicable support law, rather than on the basis of his agreement. Secondly, and more

8

importantly, "A mother cannot, by contract, bargain away the right of her minor children to adequate support from the father, regardless of the validity of the agreement as between the parents themselves." *Kraisinger v. Kraisinger*, 2007 PA Super 197, 928 A.2d 333, 345 (Pa. Super. Ct. 2007).

Because the evidence demonstrates that Lily and Emma are benefitting from their enrollment in The Baldwin School, and the tuition, considering the sizeable financial aid grants that both children receive and presumably will continue to receive, is consistent with the parties' standard of living/station in life prior to separation, this Court finds that the children's Baldwin School tuition constitutes a reasonable expense under Pa.R.C.P. 1910.16-6(d). The Court does not believe that Mother seeks contribution toward the children's education to punish Father or to be confiscatory; rather she needs assistance to continue to provide their children with the education to which they have become accustomed. The Court acknowledges that both parties may have to continue to make sacrifices so that both children are able to enjoy the benefit of a Baldwin School education, but that is a choice that both parties made well before this Court became involved. "Child support is a primary obligation of the parent and the parent himself may have to forego providing for some of his needs and luxuries in order to provide for his child." *See Frey v. Frey*, 777 DR 2003, 2006 WL 5166597 (Pa. Com. Pl. July 13, 2006) *citing Colonna v. Colonna*, 581 Pa. 1, 7, 855 a.2d 648, 651 (2004).

9

Circulated 03/31/2015 03:54 PM

**AND NOW** this 15th day of July , 2014, upon consideration of Defendant, David Barnes', Exceptions to the Recommendation of Support that was entered as a Per Curiam Order on March 8, 2013, and after a hearing de novo with both parties present; it is hereby **ORDERED** and **DECREED** that the following support order shall be effective:

## SUPPORT ORDER

Plaintiff-Mother, Stephanie Barnes, and Defendant-Father, David Barnes, are the parents of two minor children: Lily Barnes (D.O.B. 1/18/99) and Emma Barnes (D.O.B. 4/11/06).

Based upon Pennsylvania's support guidelines, with Mother's net monthly income of $5,163.48 and Father's net monthly income of $4,375.17, Father shall pay as follows:

$897.46 per month for two (2) children          plus

$183.67 per month for medical ins. provided by Mother    plus

<u>$558.52 per month for private school tuition</u>

**$1,639.65 per month TOTAL**

Pursuant to Pennsylvania Rule of Civil Procedure 1910-16.6(c), the monthly support obligation requires the custodial parent, to provide the first $250 in unreimbursed medical expenses for each child. Unreimbursed medical expenses that exceed $250 annually per child shall be allocated between the parties as indicated below. The party seeking allocation of unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received.

**Unreimbursed medical expenses shall be allocated: 46% to Father and 54% to Mother.**

Father shall submit receipts demonstrating expenses incurred by Father related to the children, including: cell phone payments, private camps, braces, and payments related to

10

extracurricular activities, to Domestic Relations for calculation of the amount of credit owed to Father figuring in his respective percentage contribution to such expenses. For each expense incurred by Father moving forward, Father shall submit receipts to Mother within thirty (30) days that the expense is incurred for Mother to reimburse Father based on her respective percent of contribution (54%).

Mother shall submit receipts regarding unreimbursed medical expenses to Domestic Relations to calculate the amount of credit, if any, owed to Mother.

**This Order is effective January 1, 2013.**

BY THE COURT:

_____
**STEVEN C. TOLLIVER                J.**

Copies mailed 7/15/14 to:
 **By First Class Mail:**
Diane S. Tosta, Esquire
Steven M. Coren, Esquire
 **By Interoffice Mail:**
Court Administration - Family Division
Domestic Relations

_____
Judicial Secretary

11