2024 PA Super 172

| | | |
|---|---|---|
| ALICIA M. HALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STARK BARTRON III | : | No. 1686 MDA 2023 |

Appeal from the Order Entered November 20, 2023
In the Court of Common Pleas of Wyoming County Civil Division at
No(s):  2017-40074,
PACSES No. 690116604

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY KUNSELMAN, J.:                   **FILED: AUGUST 8, 2024**

Alicia M. Hall (Mother) appeals the order establishing the amount she is owed from Stark Bartron, III (Father) to support their 11-year-old child. Mother argues, **_inter alia_**, that Father, who is the owner of a closely-held corporation, shielded income by reinvesting the profits back into the company. She maintains the court should have set Father's monthly net income at a much higher level.  Moreover, she argues her monthly net income should have been lower than what the court established.  After review, we conclude the trial court largely acted within its discretion; however, we must find that the court erred when it failed to attribute, as income to Father, the benefit of the personal perquisites he receives through the company.  We therefore affirm in part, vacate in part, and remand with instructions.

_____

[*] Former Justice specially assigned to the Superior Court.

The record provides the following background. Prior to the instant litigation, Father had been paying Mother $867 per month in child support pursuant to a domestic relations order entered in August 2020. In March 2023, Mother sought an upward modification. She believed that Father experienced a substantial change in circumstances – namely, an increase of his income from two sources: 1) additional income from gas leases; and 2) additional income from his self-owned business. *See* 23 Pa.C.S.A. § 4352(a). Moreover, Mother sought a modification because it had been three years since the entry of the prior order. *See* § 4352(a.1).

Mother's petition was initially heard by the domestic relations officer, who agreed with Mother on all issues. The officer noted that Father was the majority owner (75%) of his business, Bartron Supply, Inc. (the Corporation); Father's sister was the owner of the other 25%. The Corporation sells agricultural and construction equipment. The domestic relations officer determined that Father's monthly net income was far greater than the salary he claimed on his tax return (approximately $80,000 annual gross[1]). Instead, the officer imputed to Father 75% of the Corporation's profits, which excluded the Corporation's depreciation deductions. The officer ultimately recommended that Father's monthly obligation be set at $3,434 per month. Exceptions were filed, and the trial court held a hearing *de novo*.

---

[1] Father's salary is the highest in the company.

At the hearing, Father called his accountant as a witness to explain Father's personal and corporate tax returns. The Corporation, a C-Corp, is family business started by Father's grandfather. It operates out of three sites and employs 37 individuals. It does not make distributions to shareholders. Father takes a salary from the Corporation. The Corporation pays for Father's cell phone, health insurance, and vehicle.

Mother is not employed. She was injured in a car accident in 2019, and as a result, she received a monetary settlement in the amount of $1.2 million after attorneys' fees and costs. After buying a home and making other real estate investments, approximately $250,000 remained from the settlement. Mother said she cannot receive social security disability because she received too much income in child support and survivor benefits.[2] Mother receives survivor benefits, amounting to $2,800 per month, because the father of Mother's other children is deceased.

Father exercises partial physical custody – approximately 5 overnights out of 14 during the school year, and 50/50 during the summer months. Upon consideration of the testimony and evidence, the trial court departed from the domestic relation officer's recommendation and ruled that Father's obligation should remain $867 – the amount set forth in the prior obligation from 2020.

---

[2] The court determined that Mother presented no evidence of her inability to work.

Mother timely filed this appeal. She presents the following 11 issues for our review, which we reorder for ease of disposition:

1. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father, because it failed to properly consider and calculate his net profit from his business, Bartron Supply, Inc. in which he had 75% ownership and control?

2. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father, because it failed to properly consider the net profit of his corporation, available to him as income for purposes of child support?

3. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father, because it failed to consider the income available to Father that had been the depreciation deduction by Bartron Supply, Inc. of which Father had a 75% ownership interest for purposes of calculating his income for child support?

4. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father, because it failed to consider the income available to Father that had been retained earnings for the corporation, of which Father had a 75% ownership interest for purposes of calculating his income for child support?

5. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father for purposes of child support because it failed to consider the rental income benefit derived by Father from his ownership of the real estate in Tunkhannock, where his corporation, Bartron Supply, Inc., is located? That rental income was used to directly reduce his mortgage obligation and increase his equity in his real estate.

6. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father, for purposes of child support because it failed to

- 4 -

consider the rental income benefit derived by Father from his ownership of the real estate in Honesdale? That rental income was used to directly reduce his mortgage obligation and increase his equity in his real estate. Moreover, Bartron admitted that he derived a benefit because his corporation paid the downpayment and closing costs for the purchase of the real estate for which Father directly benefitted and owned.

7. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father for purposes of child support because it failed to consider the potential rental income of other real estate in Tunkhannock which he owns?

8. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father, for purposes of child support because it failed to consider the direct benefits he received from the personal use of his cell phone?

9. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father for purposes of child support because it failed to consider the direct benefits he received from the personal use of his truck and the payment by his corporation, Bartron Supply, Inc., of the monthly purchase funds, vehicle insurance, vehicle gasoline expenses and vehicle maintenance?

10. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father for purposes of child support because it failed to consider the direct benefits he received from the personal use of his pension?

11. Did the trial court err at law and abuse its discretion when it improperly calculated the income of Father for purposes of child support because it failed to consider the lack of the earning capacity of Mother? Did the trial court err at law and abuse its discretion when it improperly calculated the net proceeds she received from settlement of a personal injury claim that she will need to use to support herself for the remainder of her lifetime, and not just for the time

period prior to her child reaching 18 years of age or graduating from high school?

Mother's Brief at 5-9 (style adjusted).

Our standard of review in matters concerning child support orders is well-settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Sichelstiel v. Sichelstiel*, 272 A.3d 530, 534 (Pa. Super. 2022) (quoting *Silver v. Pinskey*, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (further citation omitted).

### A. Business Profits

Mother collapses her first four issues into a singular argument, which forms the crux of her appeal. *See generally* Mother's Brief at 15-26. The essence of her claim is that Father shielded his income by claiming a salary of only $80,000, while the business, which he owns and controls, retains its profits and lowers its taxable income by claiming depreciation deductions.

Child support awards are calculated in accordance with specific statutory guidelines, using a complex system that accounts for the obligor's capacity to

pay and the reasonable needs of the particular children. ***Sichelstiel v. Sichelstiel***, 272 A.3d 530, 535 (Pa. Super. 2022) (citing ***Commonwealth v. Hall***, 80 A.3d 1204, 1216 (Pa. 2013)). The guidelines provide detailed instructions for calculating support awards based on the obligor's monthly net income. ***Id.; see also*** 23 Pa.C.S.A. § 4322(a); ***and see*** Pa.R.C.P. 1910.16-2.

Relevant here, the statutory definition of "income" includes "income derived from business;" "gains derived from dealings in property;" "rents;" "dividends;" and "distributive share of partnership gross income." ***See*** 23 Pa.C.S.A. § 4302. To arrive at the monthly ***net*** income, the court shall deduct specific items from the monthly gross income – e.g., federal, state, and local income taxes; F.I.C.A. payments, and non-voluntary retirement payments. ***See*** Pa.R.C.P. 1910.16-2(c)(1).

The question posed by the instant appeal is how to calculate an obligor's monthly net income, when that obligor is a business owner who controls how much salary he takes from the business. The Supreme Court has adopted the reasoning that an obligor's income "must reflect the actual available financial resources and not the oft-time fictional financial picture" created by the application of federal tax laws. ***Fennell v. Fennell***, 753 A.2d 866, 868 (Pa. Super. 2000) (citing ***Labar v. Labar***, 731 A.2d 1252, 1255 (Pa. 1999) ("Otherwise put, *cash flow* ought to be considered and not federally taxed income.")). It is possible that a person could use a corporation to shelter income from the support obligation calculation by improperly retaining cash

flows within the corporation rather than disbursing them to the shareholders. *Labar*, 731 A.2d at 1255. "The owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts." *Sichelstiel*, 272 A.3d at 536 (citing *Fennell*, 753 A.2d at 868).

In situations where the individual can control the retention or disbursement of funds by the corporation, he or she still will bear the burden of proving that such actions were "necessary to maintain or preserve" the business. *Fennell*, 753 A.2d at 869 (quoting *Labar*, 731 A.2d at 1255). If the individual can demonstrate that the retention of corporate earnings is "necessary for the continued operation and smooth running of the business," then the court should not include these earnings when calculating the individual's income available for support. *See id.*

Returning to the instant matter, Mother's first four claims largely concern two notions: 1) the business retained too much net profit, which should have been considered income for purposes of calculating Father's support obligation; and 2) there would have been more business profit, available to Father, if the Corporation did not make so many unnecessary expenditures, as evidenced by the Corporation's use of depreciation.

The trial court disagreed. It determined that the Corporation's retention of earnings was necessary to sustain the business, which is a C-Corp and pays

corporate taxes.[3] In reaching this determination, the court relied on the testimony of Father and the accountant who prepared the company's tax return. Critically, the Corporation has a contract with John Deere, which is a major part of its business. Per the contract, the Corporation must maintain an equity interest of 25% or it will forfeit the contract. *See* N.T., 9/25/23, at 20.[4] The accountant testified that the Corporation clears that threshold by a little over $100,000 – approximately 3% over the mandatory 25%. *See id.* at 70. However, the accountant explained that having some wiggle room was important, because if the company had a bad year and operated at a net loss, the company would need to dip into that reserve to stay at the 25% ratio. *See id.*

As for the depreciation issue, as it pertains to the facts of this case, the court acknowledged that the question turns on whether the Corporation's expenditures were discretionary and used to expand the business or whether they were necessary to maintain and preserve the business. *See Labar*, 731 A.2d at 1258-59 ("If the source of the funds used to make these capital

---

[3] "In the case of a Pennsylvania C-corporation, income is taxed at the corporate level through the imposition of corporate net income tax, and again at the shareholder level when the C-corporation makes distributions to its shareholders. By contrast, income of a Pennsylvania S-corporation is passed through directly to its shareholders, who are subject to personal income tax based on their distributive interest in the Pennsylvania S-corporations." *See DelGaizo v. Commonwealth*, 8 A.3d 429, 433 (Pa. Cmwlth. 2010).

[4] The accountant explained that "assets minus liabilities equals your equity. So, John Deere is telling us that we need equity of twenty-five percent or greater to maintain that franchise." *See* N.T. at 20-21.

expenditures is identified as cash flows which could have instead been distributed to the shareholders, then and only then does the question arise whether the expenditures were unnecessary and therefore properly included in the calculation of the [obligor's] disposable income."). The trial court was persuaded by the accountant's testimony that the items listed in the depreciation schedule were all consistent with the historic operation of the business and the business's ability maintain its position in the market. *See generally* Trial Court Opinion (T.C.O.), 1/8/24, at *6 (not paginated). In other words, the court found that the Corporation's use of depreciation was not indicative of unnecessary expenditures, which in turn could have suggested that Father was attempting to shield income.

On direct examination, Father's counsel confronted the accountant with the domestic relation officer's recommendation. The domestic relations officer excluded the depreciation deductions from the Corporation's profits, and then used those profits to calculate Father's annual net income. The accountant testified that if those profits ($393,493.00) were actually paid to Father then "[the Corporation] would not be able to continue business. They would not have the current assets available to pay their current liabilities. Their vendors would not supply them anymore. They would essentially bankrupt the company." *See* N.T. at 43.

To resolve Mother's claims, we begin by observing the parties' shifting burdens. As the party seeking modification, Mother would typically shoulder the burden of establishing a change in circumstances necessitating a

- 10 -

modification of support. *See Summers v. Summers*, 35 A.3d 786, 789 (Pa. Super. 2012); *see also* 23 Pa.C.S.A. § 4352(a); *and see* Pa.R.C.P. 1910.19. Here, however, Mother was entitled to a review of the support obligation, given that it had been three years since the prior order, and therefore she was not required to show proof of a change in circumstances. *See* 23 Pa.C.S.A. § 4352(a.1) (discussed *infra*); *see also Krebs v. Krebs*, 944 A.2d 768 (Pa. Super. 2008). Father bore the burden – as the majority owner of his business – of establishing that the Corporation's retention of profits was necessary to maintain or preserve the business. *See Fennell*. The trial court determined Father met that burden. In the court's view, the Corporation's retention of earnings and use of depreciation schedules were necessary to the viability of the company. Now on appeal, Mother must establish that the trial court abused its discretion. *See Sichelstiel*.

We will not find an abuse of discretion simply because we might have reached a different result. Rather, "we may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Silver*, 981 A.2d at 291. It is not our role to second-guess the trier-of-fact or substitute its judgment for our own. "We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order." *Id.*

Upon review, we conclude that the trial court's determinations were supported by the record, particularly the accountant's expert testimony. Of course, the law of child support recognizes that the financial picture depicted

on a tax return does not always reflect actual dollars available to the obligor. *See Labar*, 731 A.2d at 1255. To that end, the trial court is not required to accept the testimony of an accountant in the employ of an obligor. As the trier-of-fact, the court is free to accept all, part, or none of the testimony, and we will not reverse unless such a determination was manifestly unreasonable. Here, the court determined that Father's business practices were above board and were not an effort to shield income. Mother largely argues for a recalculation, or a reassessment of Father's business practices, but she does not demonstrate why the court's findings were manifestly unreasonable – except to explain that she would receive considerably more support if we ruled in her favor. As such, Mother's first four claims merit no relief.

## B. Rental Properties.

In her fifth and sixth appellate issues, Mother argues the trial court erred when it failed to include Father's income from his rental properties. *See* Mother's Brief at 27-31; *see also* 23 Pa.C.S.A. § 4302 (including as income proceeds from rent). The Corporation operates out of three physical locations. Two of those three properties are owned by Father and his sister; one was acquired so recently that it had yet to appear on a tax return. The properties are encumbered by a mortgage; Father and his sister received a loan from the Corporation to finance the purchase. The Corporation then pays rent to Father and his sister to operate out of these locations. Father and his sister use the entirety of the rent money received from the Corporation to pay the mortgage. The accountant testified that, from a cash-flow perspective, it was a wash.

Mother argues that the court abused its discretion by not including the rental income in its calculation of Father's monthly net income. She maintains that Father is trying to have it both ways: on one hand, the Corporation's margins were supposedly so thin, that it couldn't possibly pay Father any more income; but on the other hand, the company was able to come up with $150,000 for a downpayment to help Father and his sister secure these properties. *See* Mother's Brief at 29.

Our analysis of these issues mirrors the analysis of the Corporation's profits. The trial court believed the testimony that the investment into these properties was a proper business decision to lower the Corporation's long-term costs. Again, the court had discretion to decide whether the business decision was necessary to maintain or preserve the business, or whether it was an effort to shield income from Father's support obligation. The court ruled in Father's favor, and we cannot conclude that such a determination was manifestly unreasonable. The testimony indicated that the Corporation pays less rent than it did before the purchase. Father receives no additional income on top of what is paid to satisfy the mortgage; and the accountant testified that, from a cash-flow perspective, the acquisition of the rental properties was a wash. We conclude Mother's fifth and six appellate issues merit no relief.

In her seventh issue, Mother raises another claim relating to one of Father's properties. By way of background, Father owns one vacant property, and Mother owns two vacant residential properties, which she purchased with her settlement money. The trial court mentioned, in passing, that Mother

could rent these properties out as a source of income, although the court acknowledged that Mother would have to make necessary improvements first. *See* T.C.O. at 6. Presumably, the trial court mentioned Mother's potential rental income, because Mother said she cannot work. However, Mother suggests that the trial court improperly determined that she was not entitled to additional support, because of the existence of this potential stream of income. In Mother's view, if the trial court was going to penalize her for her unrented property, then the court should also penalize Father for his unrented property. *See* Mother's Brief at 38-39.

Mother merits no relief on this point. Whatever the reason for the trial court's remark, the court clearly did not factor into its analysis the potential rental income from either party. Mother's seventh issue warrants no relief.

### C. Father's Perquisites

Comprising her eighth, ninth, and tenth appellate issues, Mother argues the trial court erred when it failed to include as income certain perquisites Father receives through the business. Specifically, Father drives a company truck, which is paid for and maintained (*i.e.*, fueled and insured) by the Corporation. Additionally, the Corporation pays for Father's cell phone. The Corporation matches Father's pension contribution (3%, or $2,400). Lastly, Mother alleges that the Corporation paid for Father's personal professional services (*i.e.*, legal and accounting services). Mother concludes that all these personal perquisites should have been included as income. Although the Rules of Procedure exclude from income a party's non-voluntary retirement

payments, Mother claims that Father's pension contribution should be included, because it is not mandatory and thus not deductible from Father's monthly net income. **See** Mother's Brief at 31-37; **see also** Pa.R.C.P. 1910.16-2(c)(1)(iii) (providing that monthly net income shall not include "non-voluntary retirement payments").

As noted above, the statutory definition of income is expansive. **See** 23 Pa.C.S.A. § 4302 (**supra**).[5]  In addition to the aforementioned examples, Section 4302 also defines income as "compensation in kind."  Moreover, our Supreme Court has held ruled that "[p]ersonal perquisites, such as entertainment and personal automobile expenses paid by a party's business must be included in income."  **Mascaro v. Mascaro**, 803 A.2d 1186, 1194 (Pa. 2002).

Our decision in **Murphy v. McDermott**, 979 A.2d 373, 379-380 (Pa. Super. 2009) provides guidance on how to calculate the value of these perquisites.  There, the obligor's employer paid $16,798.65 per year for the vehicle.  The obligor used the vehicle 40% of the time for personal use; 40% of the gross amount ($16,798.65) was $6,719.46.  Thus, $6,719.46 was the figure which would have been attributable to him as a personal perquisite

_____

[5] Notwithstanding that the definition of income also includes "royalties," the trial court did not include as income Father's gas royalties.  The court's basis for excluding the royalties was that the amount fluctuated too much.  Mother did not appeal the court's decision on this issue.  Although she mentions it in her Brief, she did not raise it in her concise statement of matters complained of on appeal.  **See** Pa.R.A.P. 1925(b)(4)(vii).  Therefore, any argument pertaining to the gas royalties was waived.

income. *Id.* Notably, however, the obligor in that case actually paid the employer for use of the vehicle, in the amount of $1,820.00. We said that that the obligor's expense should be deducted from the attributable perquisite income – *i.e.*, $6,719.46 minus $1,820.00 equals $4,899.46 – this being his ultimate perquisite benefit to be imputed as income. *Id.*

In the instant case, the accountant testified that he could not opine how much Father's use of the truck and cell phone were personal versus business related. *See generally* N.T. at 24-29; 54-55. The truck was purchased new, by the Corporation, in November 2022. Father testified that he uses it mostly for business, and that other employees have access to the vehicle and are authorized to drive it. *Id.* at 103. Father said he would estimate that the cell phone was mostly used for business, but that he does not keep track. *Id.* at 101. Ultimately, Father testified that he used the truck and the phone between 60%-70% for business and the rest for personal use. *Id.* at 103.

The trial court noted in its opinion that the domestic relations officer included the full value of Father's perquisites when calculating his monthly net income. *See* T.C.O. at 3, 6. The court did not explicitly address the perquisites in its ruling, but evidently believed that any inclusion of these perquisites was unwarranted. We presume the court determined that there had been no change in circumstances, as Father argued. This was an error of law. Section 4352(a.1) provides:

> **(a.1) Automatic review.** -- Upon request of either parent…each order of support shall be reviewed at least once every three years from the date of establishment or

the most recent review. The review shall be for the purpose of making any appropriate increase, decrease, modification or rescission of the order. During the review, taking into the account the best interest of the child involved, the court shall adjust the order, **without requiring proof of a change in circumstances**, by applying the Statewide guidelines or a cost-of-living adjustment in accordance with a formula developed by general rule.

23 Pa.C.S.A. § 4352(a.1) (emphasis added).

In her petition for modification, Mother actually alleged a change in circumstances, but she also noted that the parties' case was ripe for a three-year review. Why these personal perquisites were not considered in the parties' prior support order is of no moment.

On remand, we direct the court to ascertain the value of the personal benefit of Father's use of the truck and cell phone, and then include that value as income for purposes of support computation. *See Murphy*, 979 A.2d at 379-380 (Pa. Super. 2009) (calculating the value of the obligor's perquisite income); *see also Mackie v. Mackie*, 2019 WL 4864073, at *6-7 (Pa. Super. 2019) (non-precedential decision) (discussing the valuation of perquisite flights).

As for the professional services, we would agree with Mother that the value of these services, paid by the Corporation, might be included as income. Here, however, it does not appear that Father was the actual beneficiary of the services. Both the accountant and Father testified that the professional services expense listed on the corporate tax return was solely for the benefit of the Corporation. In other words, there was no evidence to suggest the

Corporation paid for Father's professional services relating to his personal life. For instance, we do not see record support for the inference that the Corporation paid for his attorney to litigate this child support action.

As for Father's contribution to the Corporation's pension program, we remand for the trial court to ascertain whether the Corporation's pension program is mandatory to all other employees or whether it is optional. If the Corporation mandates that all qualifying employees participate in the pension program, then we would conclude that Father's participation is "non-voluntary" for purposes of Rule 1910.16-2(c), notwithstanding the fact that he is the owner and operator of the business. However, if the pension program is optional, then we agree with Mother that Father's contributions should be included in his monthly net income.[6]

### D. Calculation of Mother's monthly net income

In her final appellate issue, Mother argues the trial court erred when it calculated her income. Specifically, the court annualized her personal injury settlement until such time as the Child turned 18; Mother argues that the settlement was for her inability to work, and thus the court should have annualized the lump sum over her lifetime.

On this point, the Rules of Procedure provide the following guidance:

---

[6] It is unclear whether the pension program is mandatory. The testimony was that the company pays pensions of "[a]ll of the ones who are – they match all of the ones who are participating in the plan." ***See*** N.T. at 52; ***see generally id.*** at 29-30.

> *Note:* The trier-of-fact determines the most appropriate method for imputing lump-sum awards as income for purposes of establishing or modifying the party's support obligation. These awards may be annualized or averaged over a shorter or longer period depending on the case's circumstances. The trier-of-fact may require all or part of the lump sum award escrowed to secure the support obligation during that period.

Pa.R.C.P. 1910.16-2(a)(8).

In other words, the trial court had discretion as to how Mother's settlement should be considered. On appeal, Mother has not demonstrated how the court's method was so manifestly unreasonable that it constituted an abuse of discretion. Mother's final issue merits no relief.

In sum, we conclude that the trial court did not abuse its broad discretion when it failed to include the Corporation's profits in its calculation of Father's monthly net income, when it failed to consider the rental incomes paid by the Corporation to Father, or when it annualized Mother's settlement until such time as when the Child turned 18. However, the trial court erred when it failed to include as income the value of the personal perquisites Father receives through the Corporation. Accordingly, for the reasons discussed above, we affirm in part, vacate in part, and remand for further proceedings.[7]

---

[7] The trial court has discretion how best to conduct remand proceedings. In our view, the record contains sufficient evidence to enable the trial court to establish the attributable value of the vehicle and the cell phone. Whether Father's pension contribution is mandatory may require further testimony and evidence.

*(Footnote Continued Next Page)*

- 19 -

Order affirmed-in-part and vacated-in-part.  Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/08/2024

---

We are conscious of the possibility that whatever increase in support Mother might receive for the benefit of the Child may be offset by the cost of litigating after remand.  While this is not a basis to affirm an erroneous support order, we encourage the parties and the trial court to resolve the pending issues efficiently and economically.