J-A03023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CAROLINE HELENA OPTHOF | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBIN BANSAL | : | |
| | : | |
| Appellant | : | No. 1361 EDA 2025 |

Appeal from the Order Entered May 22, 2025
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  DR-0019122,
PACSES: 903301384

BEFORE:   BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 6, 2026**

Robin Bansal ("Father") appeals from the child support order entered in this support action. He maintains the court erred in including in his income for support purposes amounts listed on his business tax returns for payment of interest and the amortization and sale of equipment, which he claims represented transfers to Caroline Helena Opthof ("Mother") under the property settlement agreement. We affirm.

Mother filed a complaint for child support in March 2022. Trial Ct. Op., filed July 28, 2025, at 1. The court entered multiple temporary orders.[1] *Id.* at 1-7. In November 2024, after Father submitted his completed 2023 federal

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The earliest document contained in the certified record is a June 5, 2024 interim support order requiring Father to pay $2,893.76 per month and $5,362.11 in arrears.

tax return, a trial court judge entered a support order based on proceedings before a conference officer. The order directed him to pay $7,293.77 per month in child support, which was $7,076.77 for basic support and $217.00 per month in arrears. Mother was to provide health insurance coverage and Father was responsible for 84% of unreimbursed medical expenses, and Mother was to pay 16% of such expenses. In addition, Father was to pay $2,730.77 per month for private school expenses.

Father filed objections to the support order, as well as a written demand for a *de novo* hearing and a praecipe for a protracted hearing. In January 2025, the court dismissed the objections without prejudice. Father filed another written demand for a *de novo* hearing and a praecipe for a protracted hearing. A different judge granted the request for a protracted hearing, which the court held in March 2025.

At the hearing, a financial analyst with the Domestic Relations Section of Northampton County, Anthony P. Koury ("the analyst"), testified that he had worked in that position since 1998 and that he prepared a summary of Father's income. N.T., Mar. 17, 2025, at 20.[2] He testified that on Father's personal tax return, Father showed an annual salary of $35,000, an interest income of $30,469, a dividend income of $458, and a capital gains income of

_____

[2] Father questioned the analyst as if on cross-examination.

- 2 -

$46,194. ***Id.*** at 22-23.[3] He further stated Father filed tax returns for seven businesses. ***Id.*** at 23.

The analyst testified that when the Domestic Relations Section reviews tax returns it generally adds back to an individual's income "depreciation, amortization, interest, a portion of the auto expense, miscellaneous, meals and entertainment." ***Id.*** He stated that he received "business returns for the seven businesses, and [he] calculated the disposable income based on the information that was provided to [him]." ***Id.*** at 23-24. He testified he did not review the case file or the parties' property settlement agreement. ***Id.*** at 24. The analyst stated he added back interest deductions from all of Father's businesses because on the tax returns the amount "was listed as interest, but it didn't clarify what it was for." ***Id.*** He testified he asked for additional documents, and Father provided the supporting documents for the tax returns, but "nothing in there show[ed] what the interest was for." ***Id.*** at 24-25.

The analyst testified that it was the court's policy to disallow interest deductions, that the policy came from the Administrative Law Judge for the Domestic Relations Section, and that the Domestic Relations Section has added back interest "since [he has] been employed." ***Id.*** at 25-26, 30. He clarified that "mortgage interest is allowed," but "interest other is not allowed." ***Id.*** at 31.

_____

[3] The tax returns are not in the certified record. The amounts listed in this memorandum are from the notes of transcript.

The analyst testified he was not aware Father paid Mother $1,900,000 to transfer the business entities to Father or that under the property settlement agreement, Wife became the owner of a Tesla and a Cadillac. *Id.* at 33-34. When asked whether he was aware that the equipment sale on the Bansi Capital Management Palm Beach Tan business tax return was the Cadillac from the property settlement agreement, he stated "[a]ccording to this tax return, it doesn't list it. So no, I would not have known that." *Id.* at 34-35.[4]

When asked about the tax return for Bansi Cleaning, which Father purchased in 2023, the analyst testified that he added back $53,794 of interest from the tax return because "it wasn't clearly marked what it was for." *Id.* at 36-38. He further testified that he added back to income the listed goodwill, closing costs, and franchise fees from the amortization section of the Bansi Cleaning tax return. *Id.* at 40. For the Bansi Massage and Spa tax return, the analyst agreed that the gain of $45,000 for the sale of property, which was a Tesla, was included as income. *Id.* at 42-43.

As to the tax return for Bansi Tan, for which Mother received a franchise location under the property settlement agreement, the analyst testified he included in Father's income the gain of $65,500 from the sale of equipment and the goodwill of $53,074. *Id.* at 44-48.

---

[4] The analyst testified the tax return showed a net gain of $13,000.00 for the "equipment sale." N.T. at 33.

Under questioning from Mother's counsel, the analyst testified that Father did not provide an explanation as to why the loans were for the furtherance of his businesses, did not provide documents to show the Tesla was a transfer by sale, and did not provide documents from his valuation of the businesses showing the value of the goodwill or the cost bases of the businesses. *Id.* at 50-53. The analyst further testified that Father did not indicate that Bansi Tan was an additional store Father purchased in 2023. *Id.* at 53.

Father testified that under the property settlement agreement, Mother received one business franchise location of Palm Beach Tan and two vehicles—a Tesla owned by Bansi Massage and a Cadillac owned by Bansi Capital. *Id.* at 63. Father also was to pay Mother $1,900,000 under the property settlement agreement. *Id.* Father testified that he made initial payments in installments and "used other company cash to foot the bill until he got the proceeds on the loan." *Id.* at 64. He said he obtained a loan through Bansi Tan from ApplePie for the remainder. *Id.* at 64-65. He testified the loan was for $2,000,000, with an origination fee of $50,000, a document fee of $2,500, with a 7.12% interest rate and an 84 month term, and a balloon payment of $754,000 due on August 15, 2030. *Id.* at 66. He testified that he paid interest totaling $56,945.28 on this loan in 2023. *Id.* at 66-67. He stated he also made principal payments, which he did not deduct on his tax return. *Id.* at 67.

Father also testified as to Small Business Administration ("SBA") loans for Bansi Fashion BM, Bansi Capital Management, Bansi Fashion LLC, Bansi

Tan, and Bansi Massage and Spa, and said he deducted the interest paid on the loans on his 2023 tax returns. *Id.* at 67-71.

Father testified that he purchased Bansi Cleaning in 2023 for $2,000,000. *Id.* at 71. He stated he obtained an SBA loan from Meridian Bank to purchase the business and paid $53,793.82 in interest, which included interest for this loan and a line of credit. *Id.* Father testified he paid $200,000 in out-of-pocket money to purchase Bansi Cleaning. *Id.* at 72.

Father testified that the transfers to Mother under the property settlement agreement were structured as sales on the tax returns, such that the returns listed income for the transfer of the Tesla, the Cadillac, and the Palm Beach Tan franchise location. *Id.* at 75.

On cross-examination, Father testified he was the 100% owner of all businesses following the signing of the property settlement agreement in March 2023. *Id.* at 79. He testified that the companies paid his cell phone bill and he used his house as collateral for a business loan. *Id.* at 80-82. He testified that the payments to Meridian and ApplePie came from the businesses, not his personal account. *Id.* at 83. Father agreed that he determined that he would receive an annual salary of $35,000, which he accumulated from different companies. *Id.* at 86. He further agreed he took distributions from the companies in 2023, and that he did not have the document that showed the distributions he took. *Id.* at 86-88. Father also agreed that the $1,900,000 payment under the property settlement

agreement was not just for Mother's interest in the businesses, but also included her interest in the home, artwork, and personal property. *Id.* at 89.

In May 2025, the trial court denied Father's objections and made the support order a final order. In determining Father's income for support purposes, the court included interest Father paid on the loans and the sale of equipment and amortization amounts from the returns. Father filed a timely notice of appeal.

Father raises the following issues:

A. Whether the trial court erred and abused its discretion in failing to allow interest payments as a deduction in calculating [Father's] income?

B. Whether the trial court erred and abused its discretion in failing to allow amortization and sale of equipment as deductions given that these were related to the parties' divorce settlement and did not reflect actual income?

C. Whether the trial court erred and abused its discretion in calculating [Father's] income available for support?

Father's Br. at 5 (suggested answers and unnecessary capitalization omitted).

Father's issues challenge the calculation of his income for child support purposes. When reviewing a child support award, we apply the following standard:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly

> unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*C.H.Z. v. A.J.Y.*, 262 A.3d 604, 607 (Pa.Super. 2021) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)). Where "the issues involve interpretation and application of the Rules of Civil Procedure, which are questions of law, we employ a *de novo* standard of review and plenary scope of review." *Id.* (quoting *Hanrahan v. Bakker*, 186 A.3d 958, 966 (Pa. 2018)).

"Child support awards are calculated in accordance with specific statutory guidelines, using a complex system that accounts for the obligor's capacity to pay and the reasonable needs of the particular children." *Hall v. Bartron*, 321 A.3d 1047, 1054 (Pa.Super. 2024) (citing *Sichelstiel v. Sichelstiel*, 272 A.3d 530, 535 (Pa.Super. 2022)). "The guidelines provide detailed instructions for calculating support awards based on the obligor's monthly net income." *Id.* (citation omitted); *see also* 23 Pa.C.S.A. § 4322(a); Pa.R.Civ.P. 1910.16-2.

The statutory definition of "income" includes, but is not limited to, "compensation for services, including, but not limited to, wages, salaries, bonuses[;] . . . income derived from business; gains derived from dealings in property; . . .and any form of payment due to and collectible by an individual regardless of source." 23 Pa.C.S.A. § 4302. Rule 1910.16-2 governs the calculation of monthly net income for the support guidelines and provides that certain deductions be made from the gross monthly income:

**(c) Monthly Net Income.**

(1) Unless these rules provide otherwise, the trier-of-fact shall deduct only the following items from monthly gross income to arrive at monthly net income:

(i) Federal, state, and local income taxes;

(ii) unemployment compensation taxes and Local Services Taxes (LST);

(iii) F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;

(iv) mandatory union dues; and

(v) alimony paid to the other party.

Pa.R.Civ.P. 1910.16-2(c).

The Supreme Court has concluded that when the obligor is a business owner, his or her income "'must reflect the actual available financial resources and not the oft-time fictional financial picture' created by the application of federal tax laws." *Hall*, 321 A.3d at 1054 (quoting *Fennell v. Fennell*, 753 A.2d 866, 868 (Pa.Super. 2000)). We have concluded that "[t]he owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts." *Id.* (quoting *Sichelstiel*, 272 A.3d at 536). Further, "deductions allowed under the federal tax laws, that do not represent actual reductions in a support obligor's personal income, will not be allowed in the disposable income calculation." *Labar v. Labar*, 731 A.2d 1252, 1255 (Pa. 1999). "[W]here the individual with the support obligation is able to control the retention or

disbursement of funds by the corporation, he or she still will bear the burden of proving that such actions were 'necessary to maintain or preserve' the business." **Fennell**, 753 A.2d at 869 (citation omitted).

Father first maintains that the domestic relations financial officer who calculated his net income was not familiar with the basic facts of the case. He states the officer did not know there was a property settlement agreement or its terms and did not review the file before performing the calculations. Father maintains that the officer testified that Father did not provide additional information, but claims the officer never requested additional information. Father maintains that during his direct testimony he provided evidence of out-of-pocket expenses for interest that had been paid in 2023. Father further points to his testimony that he recently purchased another business, Bansi Cleaning, and that he paid out-of-pocket capital of $200,000 for the business and obtained financing through Meridian Bank, for which he paid $53,793.82 in interest. Father maintains he established that he had out-of-pocket interest expenses that should have been deducted from his income when calculating child support. He claims the court ignored this evidence. Father further argues the interest should be deducted when calculating net income because it was paid by the businesses, not Father.

The trial court concluded it had properly added back interest payments when calculating Father's net income for child support purposes. It noted that the financial analyst for the Domestic Relations Section testified that the deductions added back into income after reviewing tax returns include

depreciation, amortization, interest, a portion of auto expenses, miscellaneous, meals, and entertainment. Trial Ct. Op. at 11. The analyst testified that he added back into the income the interest deductions from the businesses because "it was listed as interest, but it didn't clarify what it was for." *Id.* (citation omitted). The court noted the analyst clarified that mortgage interest is not added back to income, but "interest other" is, and that he testified it was pursuant to a court policy. *Id.* at 12. The court noted that the analyst testified that he received no information from Father as to why Father believed the loans were for the furtherance of the business. *Id.*

The court pointed to Pa.R.Civ.P. 1910.16-2, which it found provided a conclusive list of deductions that may be taken from gross income to determine a party's net income for support purposes, and which did not include interest payments. *Id.* at 15. It further pointed out that in *M.E.W. v. W.L.W.*, 240 A.3d 626 (Pa.Super. 2020), this Court found it was error to reduce a father's income by his obligations to repay his business loan. Trial Ct. Op. at 15; *see also M.E.W.*, 240 A.3d at 637 (concluding it was error to reduce father's income by his obligation to repay a business loan, and noting Rule 1910.16-2(c)(1) provided an exclusive list of deductions).

The court further cited *Amato v. Amato*, No. 1424 EDA 2021, 2022 WL 3088530, at *3-4 (Pa.Super. filed Aug. 3, 2022) (unpublished mem.). Noting that *Amato* was unpublished and only persuasive authority, the court explained that there, a father admitted to not maintaining separate personal and business accounts, confirmed he was the sole owner of the company, and

testified many of his personal expenses were deducted from his business. This Court found the trial court had properly added back into the father's income expenses for mileage and interest. **See** Trial Ct. Op. at 16; **Amato**, 2022 WL 3088530, at *3-4. The court noted that in **Amato**, this Court explained that expenses for mileage and interest were not among the items that should be deducted from monthly income, they were not *bona fide* expenses, and the father had not proven that the expenses increased his business income or were used for the business. **See** Trial Ct. Op. at 16; **Amato**, 2022 WL 3088530, at *3.

The trial court here concluded it did not abuse its discretion in adding back the interest payments to Father's income, noting the analyst testified interest is added back to income and Father testified a primary loan was for payment to Mother under the property settlement agreement:

> [The analyst] clearly testified that depreciation, amortization, and interest are added back in when reviewing tax returns. N.T. at 23:9-14. The interest in this matter was added back because it was listed as interest, but it did not clarify what it was for. N.T. at 24:18-20. [Father's] testimony made it clear that the interest in question in this matter was primarily related to a loan he took out, through one of the corporate entities, from ApplePie Capital, to fulfill [Father's] obligation under the parties' [p]roperty [s]ettlement [a]greement. [Father] made the choice as to how to proceed to obtain funds for the buyout in the divorce action, [Father] chose to entangle this buyout with the corporate entity; and he obligated the corporate entity, not himself, to repay the loan amount, including the interest, associated with his buyout under the [p]roperty [s]ettlement [a]greement in the parties' divorce. This is not an amount that is required or even permitted to be deducted from [Father's] income for support calculation purposes

- 12 -

> pursuant to Pa.R.C.P. 1910.16-2, therefore, it was not an error of law or an abuse of discretion to not allow the interest to be deducted from [Father's] income for support calculation purposes.

Trial Ct. Op. at 16-17.

We conclude the court did not abuse its discretion. Under Rule 1910.16-2, interest payments are not an item that can be deducted from gross income to determine net income for support purposes. Father controlled his businesses and did not establish that the interest payments were necessary for the businesses' success.

Father next contends the court erred when it included in his income the amounts listed for the sale of equipment. He alleges the court included as income to Father the "sale" of assets to Wife under the terms of the property settlement agreement. He points to *Miller v. Miller*, 783 A.2d 832 (Pa.Super. 2001), which held that money received from the sale of an asset awarded in equitable distribution may not be included as income for purposes of calculating support payments. Father maintains it "was abundantly clear" that no sale of assets occurred and it was simply a transfer of assets pursuant to the property settlement agreement. Father's Br. at 34. He maintains Mother's counsel stated that they were "not sales." *Id.* Father states the transactions were structured as a sale on the corporate returns, but claims that based on the testimony and evidence there was no "sale" of assets that would result in money received by Father to include in income.

Father further argues the court erred in disallowing his amortization expense. He maintains it represented an actual, out-of-pocket loss. He claims

- 13 -

that the domestic relations section and court "routinely disallow amortization expense based on an alleged Administrative Order," but claims the website does not identify such an order. *Id.* at 35. He further argues that when calculating income for a spouse who owns a business, the calculation must "reflect the actual available financial resources of the payor spouse." *Id.* at 36 (citation omitted) (emphasis removed). Father claims he provided clear testimony and evidence of actual out-of-pocket expenses. He further argues he testified about a business he purchased in 2023, and that he paid $200,000 out-of-pocket and obtained financing for the rest. He says a portion of the out-of-pocket funds were listed as amortization on Schedule 13 of the Bansi Cleaning 2023 Tax Return.

Father claims the court ignored **Miller** and included income it claimed Father received on the transfer of assets to Mother. He claims the trial court relied on a case, **Fennell**, where the court addressed income where a party owns a closely-held corporation. He alleges this does not address the issues in this case, as he claims here the issues address money he did not receive, as the money was paid to third-parties.

The court concluded Father structured the transfers to Mother as sales on his tax returns, that one of his businesses was paying off the loan he obtained to pay Mother under the agreement, and that Father failed to establish he was entitled to have amortization or the sale of equipment deducted from his income for support purposes:

[Father] testified that the transactions referencing the [p]roperty [s]ettlement [a]greement w[ere] structured as . . . sale[s] on the tax returns. [Father] reported income on the corporate tax return for the transfer of the Tesla and the transfer of the Cadillac. [Father] also indicated that he recognized, on his return, gain and income from the transfer of the Lancaster location of Palm Beach Tan under the under the [p]roperty [s]ettlement [a]greement. As set forth above, the $1,900,000.00 loan utilized to pay off [Mother] as part of the[p]roperty [s]ettlement [a]greement was not in the name of [Father], but one of the corporate entities, Bansi Tan. [Father] was not paying off that loan, but the corporation was, in fact, paying the loans. [Father] acknowledged that the loan could be refinanced if he did not like the interest rate, he could avoid the ballon payment if he chose, and he could determine from whom the loan could be taken or refinanced. [Father] was able to observe cashflow, and [Father] made all determinations about retained earnings for all of the corporate entitles. [Father] acknowledged that in each of the tax returns the items in question, the vehicles and the franchise transferred to [Mother], were listed as sales. [Father] had the opportunity to review the tax returns, could have made sure they were not listed as sales, but chose to sign the tax returns reflecting each of those items as sales. [Father] also testified that the various tax returns include K-1s that indicate distributions were made but could not produce checks or any proof of the various distributions.

Based upon the record in this matter, [Father] failed to establish that he was entitled to have any amortization or sale of equipment deducted from his income for child support calculation purposes. These items, whether addressed in the [p]roperty [s]ettlement [a]greement or not, were reflected in the various tax returns as sales and [Father] and/or the corporate entities signed and filed those returns. "Our jurisprudence is clear that the owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts." *Fennell*[, 753 A.2d at 868.] "[A]ll benefits flowing from corporate ownership or self employment, must be considered in determining income available to calculate a support obligation." *Spahr v.*

> ***Spahr***, 869 A.2d 548, 552 (Pa. Super. 2024). Monthly net [i]ncome for a self-employed party "must reflect actual available financial resources and not the 'oft-time fictional financial picture' created by the application of federal tax laws." ***Fennell***[, 753 A.2d at 868]. In calculating a self-employed party's available monthly net income, deductions or losses reflected on an individual or business tax return, such as depreciation, amortization, and certain other allowable expense deductions, are irrelevant unless the deductions reflect an actual reduction in available cash. [***Id.***] "Thus, by way of example, meal and entertainment expenses, personal automobile expenses, and depreciation and amortization expenses, while typically permitted as allowable deductions for federal income tax purposes for a self-employed person, may be included, under certain circumstances, in the self-employed party's net income for purposes of calculating child support." ***Moody v. Moody***, 313 A.[3]d 203 (Pa. Super. 2024).
>
> In the instant matter [the analyst] and the Domestic Relations Section properly relied upon the tax returns submitted and signed by [Father] and properly calculated his Income for child support calculation purposes. Contrary to the arguments of [Father], the tax returns, as submitted by [Father], accurately reflected the actual available financial resources of [Father] to pay child support. Therefore, it was not an error of law or an abuse of discretion to not allow the amortization and sale of equipment as a deduction.

Trial Ct. Op. at 19-21 (citations to transcript and footnote omitted).

The trial court did not abuse its discretion in adding back to Father's income amounts listed for the sale of the vehicles and business and the amortization. The court reviewed the evidence and determined Father structured the transfers to Mother as sales on his tax returns and pointed out that one of his businesses was paying off the loan he obtained to pay Mother under the agreement. The court did not err.

- 16 -

Further, ***Miller***, relied on by Father, is inapposite. There, the wife argued that the money the husband received under the equitable distribution award should be included in his income for support purposes. ***Miller***, 783 A.2d at 834. This Court concluded that "[m]oney received from the sale of an asset awarded in equitable distribution may not be included in an individual's income for purposes of calculating support payments." ***Id.*** at 835. The court noted the "single caveat to this rule is that any gain realized in the sale of the asset may, indeed must, be included in the calculation of income." ***Id.*** Here, the money included as income to Father is not amounts he received under the equitable distribution award. Rather, it is gains he listed on his tax returns for the sale of equipment and amortization when he transferred assets to Mother.

In his final issue Father maintains the court erred and abused its discretion in calculating his income available for support. He "asserts that the errors committed by the Trial Court, including the procedural errors of not permitting a hearing before the Court to the Order of November 8, 2024, have caused a gross miscalculation of [Father's] income" and that the order is burdensome. Father's Br. at 40. Father included this issue as a "catch-all" and makes no new argument and cites not case law in this section. It does not warrant relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/6/2026